UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

FREDERICK VERNON WILLIAMS,

            Petitioner,           Case No. 1:20-cv-286

v.                                         Honorable Robert J. Jonker

CHAD F. WOLF et al.,

            Respondents.
_____/

## OPINION

      This is an action by a federal prisoner seeking a temporary restraining order (TRO) on a detainer issued by the Department of Homeland Security (DHS), purportedly under Rule 65(a) and (b) of the Federal Rules of Civil Procedure.[1] However, as Rule 82 of the Federal Rules of Civil Procedure provides, "'[t]hese rules shall not be construed to extend or limit the jurisdiction of the United States district courts . . . .'" *Kontrick v. Ryan*, 540 U.S. 443, 454 (2004) (quoting 12C C. Wright, A. Miller, & R. Marcus, *Federal Practice and Procedure* § 3141, pp. 484-85 (2d ed. 1997)); *see also Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 370 (1978). As a consequence, Rules 65(a) and (b) do not independently provide a basis for this Court's jurisdiction.

      Petitioner does not expressly indicate the jurisdictional basis for his filing. However, he seeks to be released on bond from the custody of the DHS. Arguably, he may intend to pursue a petition to reopen, under 8 U.S.C. § 1229a(a)(7), his removal determination before the Board of Immigration Appeals (BIA), which found him inadmissible at the time of entry under

---

[1] Petitioner subsequently filed a motion to expedite and/or for preliminary injunction (ECF No. 3).

8 U.S.C. § 1227(a)(1)(A). Alternatively, Petitioner may intend his pleading to be construed as a petition for habeas corpus under 28 U.S.C. § 2241. When docketing the filing, this Court classified the case as such a petition.

Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases (applicable to § 2241 petitions under Rule 1(b)); *see also* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because the Court lacks subject-matter jurisdiction.

## Discussion

**I.      Factual allegations**

Petitioner Frederick Vernon Williams was incarcerated under the jurisdiction of the Bureau of Prisons at the North Lake Correctional Facility. He has since been transferred to the custody of the INS and is housed at the Calhoun County Correctional Facility.

On January 19, 2016, following a 10-day jury trial in the District of Nevada, Petitioner was found guilty of Counts 1-4, 8-16, 19-20, 22, 28-30, and 32-33 of the third superseding indictment, including convictions on the following offenses: one count of making a false statement in application for a passport, 18 U.S.C. § 1532 (Count 1); two counts of making a false citizenship claim, 18 U.S.C. § 911 (Counts 2, 8); two counts of aggravated identity theft, 18

U.S.C. § 1028A(a)(1) (Counts 3, 29); five counts of theft of government money and aiding and abetting, 18 U.S.C. §§ 641, 2 (Counts 4, 28, 30, 32-33); conspiracy, 18 U.S.C. § 1349 (Count 9); and ten counts of mail fraud, 18 U.S.C. § 1341 (Counts 10-16, 19-20, 22). On July 22, 2016, the court entered judgment, imposing the following sentences: 63 months' imprisonment on Counts 1, 4, 9-16, 19, 20, 22, 28, 30, 32-33; 36 months' imprisonment on Counts 2 and 8, all to run concurrently; 24 months' imprisonment on Counts 3 and 29 to run consecutively, resulting in an aggregate sentence of 87 months. *United States v. Williams*, No. 2:12-cr-463 (D. Nev. July 22, 2016) (J. in Criminal Case, Doc. 834.)

Petitioner's criminal convictions arose from a passport scheme undertaken by Petitioner and his half-sister to obtain citizenship for themselves and others and to use that citizenship to obtain federal benefits. According to the criminal proceedings, Petitioner submitted his application for citizenship using supporting documents purporting to demonstrate that he was the son of a deceased United States citizen, Eric Lee Williams, who had lived in northern Nevada. Petitioner's birth certificate, however, named his father as Eric Alexander Williams. *Id.* (Roland Testimony, T. Tr. I, Doc. 778 at p.22). Petitioner successfully obtained a United States passport. Petitioner then used a similar method to obtain citizenship for his half-sister, who had a different father. Thereafter, Petitioner used his passport to petition to make his mother a permanent resident and for his Belizean fiancée to come to the United States. She subsequently sought welfare assistance. Petitioner and his sister also used false information about fake Nevada companies and fictitious wages to obtain unemployment benefits, social security benefits, federal student loans, and food stamps. While investigating the suspected passport fraud, agents interviewed the mother of the deceased Eric Lee Williams, who reported that her son, a Native American, had never left

3

the United States and only had children born to two United States citizens.[2] Investigation showed that Eric Alexander Williams, the name on Petitioner's birth certificate,[3] was a Belizean national, who had been deported on several occasions from the United States, including once when he was using a visa obtained in the name of Eric Brakeman. *Id.* (Doc. 778 at p. 27). In convicting Petitioner of making a false statement in application for a passport, 18 U.S.C. § 1532, the jury found that Petitioner was not the son of a United States citizen.

Petitioner appealed his convictions and sentences to the Ninth Circuit Court of Appeals. In a memorandum decision issued on March 22, 2018, the Ninth Circuit rejected all appellate arguments and affirmed the decisions of the district court. *United States v. Williams*, No. 16-10330 (9th Cir. Mar. 22, 2018) (DktEntry: 89-1).

On August 14, 2019, Petitioner filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence in the District of Nevada. *Williams*, No. 2:12-cr-463 (Doc. 966). Among the arguments he makes in his § 2255 petition is that he is actually innocent of the offenses, because he is a United States citizen. Petitioner's § 2255 motion remains pending.

According to the allegations of the instant habeas application, Petitioner contends that he is a citizen of the United States, as the second son of an American-citizen father and a Belize-citizen mother, who was born in Belize on September 27, 1980. He first entered the country on June 20, 2000, using a non-immigrant visa issued by the American embassy in Belize. In November 2004, the Secretary of State determined that Petitioner was a United States citizen under 8 U.S.C. § 1401(g) and issued him a passport. His passport subsequently was revoked.

---

[2] Petitioner asserts that the man identified by the government in the criminal proceedings, Eric Lee Williams, was not his father, because the Eric Lee Williams identified by the government was born one year later than the government originally alleged.

[3] Petitioner attaches to his petition a copy of the birth certificate, indicating that his father was Eric Alexander Williams. (ECF No. 1-1, PageID.16.)

4

On December 16, 2012, DHS initiated removal proceedings against Petitioner, alleging that he is deportable for the following reasons: (1) he is not a citizen or national of the United States; (2) he is a native and citizen of Belize; (3) he was admitted to the United States on November 2, 2012, with a fraudulently obtained United States passport; (4) he did not then possess or present a nonimmigrant visa or other document valid for admission; and (5) on August 13, 2012, he pled guilty in the Clark County, Nevada, Circuit Court to attempted theft, in violation of Nev. Rev. Stat. §§ 205.0832, 205.0835, 193.330. Petitioner was detained by DHS after his release from the custody of Nevada after Petitioner had pleaded guilty to the Nevada state criminal charge, but before he was sentenced on that charge.

Petitioner appeared before an immigration judge (IJ) on January 13, 2013, where he conceded that he was born in Belize, but contended that he was a United States citizen by virtue of his father's citizenship. However, because he was tired of being detained, Petitioner requested release on bond and voluntary departure. The IJ granted the request for bond, which was set at $10,000, but denied the request for voluntary departure. Petitioner was unable to pay the bond amount and therefore requested an order of removal, purportedly in order to get out of DHS custody. To support his request for an order of removal, Petitioner expressly denied any interest in disputing that he was subject to deportation and was not a citizen of the United States. The IJ granted the order of removal.[4] *Williams v. Barr*, No. 14-72532 (9th Cir.) (Jan. 24, 2013, Immig. Hr'g Tr., DktEntry: 43-2, Page 32; Jan. 24, 2013, IJ Order, DktEntry: 6, Page 135.) Petitioner appealed the removal order. The BIA dismissed Petitioner's appeal as untimely. *Id.* (Nov. 18, 2013, BIA Order, DktEntry: 6, Page 156).

---

[4] Following entry of the order of removal, Petitioner was taken into the custody of the United States Marshal for the criminal prosecution that led to the July 22, 2016, convictions.

Petitioner filed two motions to reopen the removal decision. The first motion, filed on February 12, 2013, shortly after the IJ entered the order of removal, sought to resurrect Petitioner's claim of citizenship, which he had just abandoned. The IJ denied the motion on February 20, 2013, because his claim of citizenship was unsupported by evidence, despite Petitioner's promise to provide such supporting documentation. *Id.* (Feb. 13, 2013, IJ Order Den. Mot. to Reopen, DktEntry: 6, Page 243). Petitioner filed a second motion to reopen in December 2013, again arguing that he was a citizen. The IJ denied the motion on January 21, 2014, because the motion was time-barred and constituted an unauthorized second motion to reopen. *Id.* (Certified Admin. Record, Jan. 21, 2014, IJ Decision, DktEntry: 6, Page 106). Petitioner appealed the IJ's decision to the BIA. *Id.* (Appeal to BIA, DktEntry: 6, Page12-27). The BIA dismissed the appeal in an order issued on July 15, 2014, holding that the motion was untimely, an improper second motion, and meritless. *Id.* (July 15, 2014, BIA Decision, DktEntry: 6, Page 5-7). Petitioner then filed a petition for review in the Ninth Circuit from the decision of the Board of Immigration Appeals. *Id.* (Pet. for Review, DktEntry: 1-4). On February 26, 2015, the Ninth Circuit granted Petitioner's request to stay removal proceedings during the pendency of his petition for review. *Id.* (Feb. 25, 2015, Order, DktEntry:14.) The petition for review was further stayed until the outcome of the federal criminal proceedings, and subsequently his criminal appeal. *Id.* (Nov. 17, 2016, Order, DktEntry: 34; Mar. 23, 2017, Order, DktEntry: 39). In an unpublished memorandum decision issued on January 10, 2020, the Ninth Circuit denied Petitioner's petition for review of the BIA's dismissal of his appeal from the IJ's denial of his second motion to reopen removal proceedings. *Id.* (DktEntry: 63-1). Petitioner sought rehearing, *id.* (DktEntry: 64), which the panel denied. *Id.* (DktEntry: 65). Mandate issued on March 3, 2020. *Id.* (DktEntry: 66).

Two weeks later, on March 16, 2020, Petitioner filed the instant petition,[5] while he still was confined with the Bureau of Prisons under his criminal sentence. Petitioner argues here, as he did in his immigration and criminal proceedings, that he is citizen of the United States by birth and that he therefore is entitled to release from immigration detainer and detention.

## II.    Discussion

To the extent that Plaintiff intends to seek review of the BIA's denial of his motion reopen his removal proceedings following a final order of removal, this Court lacks jurisdiction to hear the matter. Jurisdiction to hear an appeal from a decision of the BIA lies in the "court of appeals for the judicial circuit in which the immigration judge completed the proceedings." 8 U.S.C. § 1252(b)(2). In the instant case, jurisdiction for the appeal of the BIA decision lies in the Ninth Circuit. Indeed, Petitioner already filed in the Ninth Circuit his petition for review from the decision of the BIA to reopen his removal proceedings, and the court has denied that petition. This Court therefore lacks jurisdiction to consider the petition under § 1252(b)(2).

The question, therefore, is whether Petitioner is entitled to review of the order of removal under 28 U.S.C. § 2241. Section 2241(c)(3) authorizes "any person to claim in federal court that he or she is being held 'in custody in violation of the Constitution or laws . . . of the United States.'" *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (quoting 28 U.S.C. § 2241(c)(3)). As the Supreme Court has explained, § 2241 "implements the constitutional command that the writ of habeas corpus be made available . . . to test the legality of a given restraint on liberty." *Jones v. Cunningham*, 371 U.S. 236, 238 (1963); *see also Zadvydas v. Davis*, 533 U.S. 678, 688

---

[5] Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). The Sixth Circuit also has held that the date a document is signed is presumed the date it was handed to prison authorities. *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006). Petitioner signed his application on March 16, 2020. (Pet., ECF No. 1, PageID.13.)

(2001). In addition, the Suspension Clause of that provision states, "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art.1, § 9, cl. 2.

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), effective September 30, 1996, 110 Stat. 3009-546, contained substantial amendments to the Immigration and Nationality Act (INA), 66 Stat. 163, as amended, 8 U.S.C. § 1101 et seq. As part of those amendments, Congress included language limiting the availability of judicial review outside the scope of the petition-for-review process. The Supreme Court, in *INS v. St. Cyr*, 533 U.S. 289 (2001), considered the jurisdiction-stripping language of 8 U.S.C. §§ 1252(a)(1), 1252(a)(2)(C), and 1252(b)(9) (1994 ed., Supp. V), which the Court summarized as follows:

> As amended by § 306 of IIRIRA, 8 U.S.C. § 1252(a)(1) (1994 ed., Supp. V) now provides that, with certain exceptions, including those set out in subsection (b) of the same statutory provision, "[j]udicial review of a final order of removal . . . is governed only by" the Hobbs Act's procedures for review of agency orders in the courts of appeals. Similarly, § 1252(b)(9), which addresses the "[c]onsolidation of questions for judicial review," provides that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." Finally, § 1252(a)(2)(C), which concerns "[m]atters not subject to judicial review," states: "Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed" certain enumerated criminal offenses.

*St. Cyr*, 533 U.S. at 311. The Supreme Court held that the language of the revised statutes under the IIRIRA was insufficiently clear and unambiguous to demonstrate Congress' intent to strip the federal courts of habeas jurisdiction under 28 U.S.C. § 2241 to review executive removal decisions—jurisdiction long held by the federal courts. *Id.* at 312-14. Nevertheless, the Court held that "Congress could, without raising any constitutional questions, provide an adequate substitute [for habeas review] through the court of appeals." *Id.* at 314.

Thereafter, in the REAL ID Act of 2005 (eff. May 11, 2005), Congress amended 8 U.S.C. § 1252 to make clear its intent to provide such a substitute remedy and to eliminate the exercise of habeas jurisdiction under 28 U.S.C. § 2241 to review of an order of removal issued by the BIA. Using virtually identical language in §§ 1252(a)(2)(B), (a)(2)(C), (a)(4), (a)(5), (b)(9), and (g), Congress expressly precluded the use of habeas review under § 2241 to challenge removal decisions:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). In addition to expressly stripping habeas jurisdiction, Congress added a new provision, explicitly authorizing federal courts of appeal to review constitutional claims and questions of law when considering a petition for review:

> Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

8 U.S.C. § 1252(a)(2)(D). By the addition, Congress ensured that questions previously reviewed in § 2241 proceedings were reviewable in the petition-for-review remedy. *See Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1072 (2020) (acknowledging that Congress' jurisdiction-stripping and expansion of the scope of a petition for review undoubtedly were an attempt by Congress to follow the guidance of *St. Cyr* and to provide an adequate substitute for habeas review in immigration proceedings so as to consolidate the review process). The *Guerrero* Court held that the addition of the authority to review "questions of law," "included both statutory interpretations and applications of law to undisputed facts or adjudicated facts." *Id.*

This Court therefore must determine whether the jurisdiction-stripping provisions of the of § 1252 effectively removed habeas corpus jurisdiction over INS removal decisions without violating the Suspension Clause. In *Muka v. Baker*, 559 F.3d 480 (6th Cir. 2009), the Sixth Circuit reviewed whether the REAL ID Act of 2005 unquestionably evidenced Congressional intent to strip the district court of jurisdiction to review a habeas petition seeking a stay of removal proceedings. The court held that,

> with one limited exception not applicable in the instant case,[3] "[t]he REAL ID Act of 2005 clearly eliminated a habeas petition as a means for judicial review of a removal order." *Jaber v. Gonzales*, 486 F.3d 223, 230 (6th Cir. 2007); *see also Elia v. Gonzales*, 431 F.3d 268, 273 n. 5 (6th Cir. 2005) (noting that "the REAL ID Act amendments limit habeas relief" in immigration cases); *cf. Almuhtaseb v. Gonzales*, 453 F.3d 743, 747 (6th Cir. 2006) (stating that "[t]he REAL ID Act renders petitions for review the exclusive means for judicial review for all orders of removal, except for limited habeas review of expedited removal orders").
>
> [3] The REAL ID Act provides limited habeas review in instances of expedited removal orders. 8 U.S.C. § 1252(e)(2).

*Muka*, 559 F.3d at 483. The court also concluded that the 2005 amendments did not violate the Suspension Clause, because the petition-for-review process "provides an 'adequate and effective' mechanism for relief." *Id.* at 485 (citing *Kolkevich v. Att'y Gen. of United States*, 501 F.3d 323, 332 (3d Cir. 2007) ("[T]here is no question that the current regime, in which aliens may petition for review in a court of appeals but may not file habeas, is constitutional."); *Mohamed v. Gonzales*, 477 F.3d 522, 526 (8th Cir. 2007) ("[The REAL ID Act affords] a remedy as broad in scope as a habeas petition. It is an adequate and effective substitute to test the legality of a person's detention."); *Iasu v. Smith*, 511 F.3d 881, 888 (9th Cir. 2007) ("[F]acially, the REAL ID Act is not an unconstitutional suspension of the writ because the new statutory scheme provides an adequate substitute by allowing judicial review of the final order of removal through the courts of appeals." (internal quotation marks omitted)); *Alexandre v. United States Att'y Gen.*, 452 F.3d 1204, 1206 (11th Cir. 2006) (same); *see also Zundel v. Gonzales*, 230 F. App'x 468, 473 (6th Cir. 2007)

10

(unpublished opinion) (noting that "petitioner ha[d] not shown that a petition for review fails to provide an adequate opportunity for review of his challenge to his removal and is therefore an inadequate substitute for the writ")).

More recently, in *Hamama v. Adduci*, 912 F.3d 869 (6th Cir. 2018), the Sixth Circuit considered a class challenge to the detention of aliens under two provisions:

> The government has kept Petitioners detained, as relevant to the appeal before us, under the authority provided in two statutes. The first grants authority to detain aliens who are subject to final removal orders because they have not moved to reopen their immigration proceedings or have not prevailed in a motion to reopen their proceedings. *See* 8 U.S.C. § 1231(a)(6). The second grants authority to detain certain aliens who have succeeded in having their removal orders reopened (and are not subject to a final removal order and detention authority under § 1231) but have criminal convictions or qualifying terrorist activities that render them subject to mandatory detention pending a decision on removal. *See* 8 U.S.C. § 1226(c)(1).

*Id.* at 873. The *Hamama* court held that, "[u]nder a plain reading of the text of the statute, the Attorney General's enforcement of . . . removal orders falls squarely under the Attorney General's decision to execute removal orders and is not subject to judicial review." *Id.* (citing *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999)). The *Hamama* court again considered whether the jurisdictional limitations of § 2252(g) violated the Suspension Clause with respect to the classes of aliens in issue in the case. The court held that the provision did not violate the Suspension Clause. *Id.* at 875-76. As the *Hamama* court reiterated, the petition for review process authorized by Congress for review of such proceedings was "adequate and effective to test the legality of a person's detention." *Id.* (citing *Swain v. Pressley*, 430 U.S. 372, 381 (1977); *Felker v. Turpin*, 518 U.S. 651, 664-65 (1996)). The court concluded that, when stripping federal courts of habeas jurisdiction by way of § 1252(g), "it provided aliens with an alternative method to challenge the legality of removal orders: a motion to reopen followed by a petition for review filed in a court of appeals." *Id.* (citing 8 U.S.C. § 1252(a)(5), 2(D). The Sixth Circuit therefore

reasoned that the process provided an alien with the same scope of relief provided by a habeas action. As a consequence, the court held that § 1252(g), did not violate the Suspension Clause.

This Court is bound by the reasoning of Sixth Circuit in both *Muka* and *Hamama*. Under the jurisdiction-stripping provisions of § 1252, as amended by the REAL ID Act, this Court lacks subject matter jurisdiction over Petitioner's collateral attempt to challenge the validity of his removal order.

Moreover, on the facts of the instant case, the limitation on habeas jurisdiction unquestionably does not offend notions of fundamental justice. After being fully informed of the consequences of his decision, Petitioner admitted he was not a United States citizen. He may have done so for a strategic purpose, but he nevertheless made the admission that formed the basis for the IJ's order of removal. Moreover, since his first removal hearing in January 2013 through his two motions to reopen, appeals, and petition for review decided in March 2020, Petitioner has raised his alleged United States citizenship as the basis for overturning the removal order. As a result, the question has been fully adjudicated. Indeed, in addition to appellate court review of his petition for review of the BIA decision, Petitioner has had the full panoply of trial rights in his criminal proceedings, yet the jury concluded beyond a reasonable doubt that he had both made a false statement in application for a passport, in violation of 18 U.S.C. § 1532, and made a false citizenship claim, in violation of 18 U.S.C. § 911. Those convictions were upheld on appeal.

For the stated reasons, no basis exists for concluding that the administrative remedies provided by Congress were not "adequate and effective to test the legality of [his] detention." *Hamama*, 912 F.3d at 876. The Court therefore will dismiss the habeas petition for lack of subject-matter jurisdiction.

Moreover, in light of the Court's determination that it lacks subject-matter jurisdiction over the case, it lacks jurisdiction to grant Petitioner's request for a TRO (ECF No. 1) and his motion to expedite (ECF No. 4).

### **Conclusion**

The Court will enter an order denying Petitioner's requests to expedite and for a TRO and a judgment dismissing the petition.

Dated:   May 12, 2020   /s/ Robert J. Jonker
ROBERT J. JONKER
CHIEF UNITED STATES DISTRICT JUDGE